## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

_____

**Scott Kimble,**

        Plaintiff,

   v.

**Opteon Appraisal, Inc.,**

        Defendant.

_____

### DECISION and ORDER

23-cv-6399-FPG-MJP

### APPEARANCES

| | |
|---|---|
| **For Plaintiff:** | **Bruce E. Menken, Esq.**<br>**Jason J. Rozger, Esq.**<br>Beranbaum Menken Ben-Asher & Bierman LLP |
| | **Bryan J. Schwartz, Esq.**<br>Bryan Schwartz Law<br>1330 Broadway, Ste 1630<br>Oakland, CA 94612 |
| **For Defendant:** | **William J. Anthony, Esq.**<br>Littler Mendelson, P.C.<br>900 Third Ave, 8th Floor<br>New York, NY 10022 |
| | **Riane F. Lafferty, Esq.**<br>Littler Mendelson, P.C.<br>375 Woodcliff Dr, Ste 2D<br>Fairport, NY 14450 |

[Remainder of page intentionally blank.]

## INTRODUCTION

**Pedersen, M.J.** FLSA plaintiffs sometimes make the decision to bring a collective action in a state where the employer-defendant is not "at home." By this, I mean that the employer's headquarters is elsewhere. And the employer's business is incorporated elsewhere.

That choice is a gamble because of the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255 (2017). Courts are split about if *Bristol-Myers* requires a connection between each plaintiff's claim and the forum state in collective actions.

Plaintiff Scott Kimble made that gamble here. Kimble brought this collective action in the Western District of New York. Yet his employer, Defendant Opteon Appraisal, is headquartered in Arizona and incorporated in Delaware. Certainly, Kimble's claim is connected to New York because it arose here. The question before me is if out-of-state plaintiffs who did not work for Opteon in New York and did not reside in New York during the relevant time can join Kimble's FLSA collective action. I hold that they cannot. These out-of-state plaintiffs lack a sufficient connection to this forum.

Kimble's gamble thus does not pay off. Apart from plaintiffs whose claims have sufficient connection to New York who join Kimble's collective action, this Court lacks specific jurisdiction under *Bristol-Myers*. And this Court lacks general jurisdiction over Opteon because Opteon is not "at home" in New York State.

## SUMMARY

I summarize my ruling on Kimble's pending motion for corrective action. For the reasons stated here and below, **I DENY IN PART** and **RESERVE IN PART** on Kimble's motion for corrective action and equitable tolling.

**This Court lacks specific jurisdiction under *Bristol-Myers.*** While general jurisdiction is easy to explain, this Court's lack of specific jurisdiction under *Bristol-Myers* warrants discussion. This Court lacks specific jurisdiction over the FLSA claims of out-of-state plaintiffs who would like to join Kimble's collective action for the following reasons. *First*, I see no reason to analyze this case as I would a Rule 23 class action. FLSA collective actions—where each plaintiff is a party—are a far cry from Rule 23 class actions. FLSA collective actions do not have a place in the carve-out for personal jurisdiction courts have used for class actions.

*Second*, I note that the FLSA does not provide for nationwide service of process. So, Fed. R. Civ. P. 4(k)(1)(A) steps in, bringing with it New York's long-arm provision. Rule 4(k)(1)(A) analyzes jurisdiction from the perspective of a state court in the forum state.

*Third*, I analyze specific jurisdiction under Rule 4(k)(1)(A) and New York's long-arm provision. Applying *Bristol-Myers* to New York's long-arm provision and Rule 4(k)(1)(A) yields an unambiguous result: because *Bristol-Myers* requires that each plaintiff's claim be connected

to New York State, this Court lacks specific jurisdiction over out-of-state plaintiffs' FLSA claims against Opteon. Only in-state plaintiffs' claims are connected to this forum and Opteon's actions within it.

*Finally*, even if that were not so, I find that New York's long-arm provision does not provide this Court jurisdiction over out-of-state plaintiffs who may want to opt in (or already have). Such claims are unrelated to Opteon transacting business in New York. In sum, under *Bristol-Myers*, absent the showing of a connection to New York, this Court lacks specific jurisdiction over the FLSA claims of out-of-state plaintiffs looking to join, or who have joined, Kimble's collective action.

**I summarize the relief awarded and next steps I require the parties to take.** I cannot provide corrective notice or corrective action to out-of-state plaintiffs when this Court lacks general and specific jurisdiction over their FLSA claims. I thus **DENY** Kimble's motion insofar as it seeks corrective action for these out-of-state plaintiffs.

I likewise **DENY** Kimble's request for equitable tolling made in his motion for corrective action. Kimble does not adequately discuss application of the standard for equitable tolling in his moving papers. But I grant Kimble leave to renew.

Although it may be cold comfort, I find that a hearing on corrective action is warranted for the plaintiffs over whom this Court does have personal jurisdiction. I thus **RESERVE** decision on that portion

of Kimble's motion seeking corrective action. Kimble may request a hearing on corrective action no later than 14 business days after the date of this order for plaintiffs over whom this Court has personal jurisdiction.

I also provide this timeframe so that the parties can determine next steps as to the out-of-state plaintiffs who have already opted into Kimble's action. Within the same 14-day window, I direct the parties to meet and confer about if these claims should be dismissed or if certain claims—or this entire action—should be transferred to another jurisdiction, such as one where Opteon is "at home." Any stipulation and proposed order regarding dismissal or transfer of those claims (or this entire action) must be filed within 14 days of this order. Absent a stipulation, I direct the parties to propose a briefing schedule for any motions they believe are appropriate, or to propose a briefing schedule for appealing portions of my decision and order to the Hon. Frank P. Geraci, Jr., Senior District Judge.

## BACKGROUND

Plaintiff Scott Kimble filed his collective action complaint on July 14, 2023. (ECF No. 1.) Kimble seeks relief under the FLSA, codified in relevant part at 29 U.S.C. § 216(b). (*Id.* ¶ 1.)

Defendant Opteon is a Delaware corporation with its principal place of business in Arizona.[1] (*Id*. ¶ 5.) Opteon is an appraisal company, employing allegedly "over 200 full-time Staff Appraisers who work from their homes throughout the United States." (*Id*. ¶ 6.) Working remotely, these Staff Appraisers "evaluate residential properties." (*Id*. ¶ 8.) The complaint alleges that Opteon asks much of its Staff Appraisers.

### The complaint alleges that Opteon demands that its Staff Appraisers work long hours without overtime.

Kimble alleges that Opteon "often assigns Staff Appraisers" like him large numbers of appraisals "which necessitates" that he "work in excess of forty hours" per week. (*Id*. ¶ 12.) Yet Opteon does not pay overtime. (*Id*. ¶ 13 ("Instead, as part of Opteon's business model, it pays Staff Appraisers a fixed percentage of the fee received by Opteon for each [appraisal] report.").)

Opteon also requires its Staff Appraisers to work more than 40 hours per week by requiring quick turnarounds. Kimble asserts that Opteon micro-manages its Staff Appraisers, "minutely detailing" their "duties from start to finish of the process of generating an appraisal

---

[1] Because Kimble and Opteon agree on this point, I see no reason to hold off on a decision concerning personal jurisdiction. (Compl. ¶ 5; Decl. of Ben Clark ¶ 3, ECF No. 24-4, Dec. 22, 2023.) Kimble has presented nothing to suggest that Opteon is "at home" in New York such that it would be subject to general jurisdiction. And if Kimble could suggest as much, he had the opportunity to do so in reply to Opteon's opposition since Opteon asserted there that it is not domiciled in New York.

report[.]" (*Id*. ¶ 23.) This micro-managing includes mandating specific actions within short timeframes—without regard for how much the Staff Appraiser has already worked that day or that week. (*Id*. ¶¶ 24, 30.) Kimble and other Staff Appraisers are "required to monitor Opteon's work assignment system during the day and immediately respond when they receive an assignment." (*Id*. ¶ 27.)

Worse, "as of January 17, 2023, Opteon implemented a six-day work week, requiring Staff Appraisers to meet Saturday deadlines." (*Id*. ¶ 28.) Kimble alleges that Opteon senior staff "advised" him and other Staff Appraisers "that they should be operating on a schedule of ten-hour workdays, six days per week, resulting in a sixty-hour work week." (*Id*. ¶ 29.) If true, the complaint's allegations demonstrate serious violations of the FLSA. But Opteon has a powerful rejoinder.

### Opteon timely asserts a defense of lack of personal jurisdiction.

Recognizing the import of the Supreme Court's decision in *Bristol-Myers*, Opteon included a personal jurisdiction defense in its answer. (Answer at 10, ECF No. 6, Sept. 29, 2023.) And Opteon asserted the defense in the parties' proposed discovery plan when Kimble indicated he would move to compel identification of potential collection action members. (Proposed Discovery Plan ¶¶ 4–8, ("PDP"), ECF No. 12, Oct. 27, 2023.)

The parties' PDP included a briefing schedule for a motion to compel contact information for other Staff Appraisers who may want to join

the collective action. (*Id.* ¶¶ 4–6.) I made the parties' proposed briefing schedule part of the operative scheduling order. (Scheduling Order ¶ 4, ECF No. 18, Nov. 8, 2023.) Oddly, the parties did not follow this briefing schedule.

When Kimble did not move to compel by the noted deadline, my staff inquired if the scheduling order needed to be updated. Kimble indicated that the parties had been meeting and conferring about identifying the other Staff Appraisers so they could decide if they wanted to join the collective action. (Letter, ECF No. 22, Dec. 13, 2023.) But Kimble and Opteon quickly determined they were at an impasse.

### Kimble requests corrective action because Opteon is rolling out a new employment agreement with an arbitration provision.

Given the parties' impasse, Kimble brought a new issue to my attention: improper "communications with the putative collective action members" meriting "a corrective notice[.]" (Email, Dec. 12, 2023, on file.) In several emails with my staff, the parties sharply disputed issuing a corrective notice. At Kimble's request, my staff provided procedural information from the local rules because Kimble believed he urgently needed to ask for the corrective notice.

Kimble believes he needs fast relief because Opteon has allegedly offered other Staff Appraisers "new employment and arbitration agreements, which prior to this action were not required to continue employment with Defendant." (Decl. of Bryan Schwartz, Esq., in Support of

Plaintiff's Mot. for Corrective Relief and Equitable Tolling, Ex. A at 1, ECF No. 21-1, Dec. 13, 2023.) These communications involve a new arbitration agreement Opteon purportedly had already planned to have its Staff Appraisers sign. (Decl. of Ben Clark ¶ 6, ECF No. 24-4, Dec. 22, 2023.) These agreements could hamper this collective action or "otherwise discourag[e] participation in the suit." (*Id.* (alteration added).)

Under Loc. R. Civ. P. 7(d)(1), Kimble moved for expedited hearing and for corrective action. (Mot. to Expedite, Mot. for Hr'g, ECF No. 19, Dec. 13, 2023; Mot. for Corrective Relief and Equitable Tolling, ECF No. 20, Dec. 13, 2023.) I granted Kimble's motion for expedited briefing in part, reserving on holding oral argument.[2] (Order, ECF No. 23, Dec. 14, 2023.)

As Local Rule 7(d)(1) provides, Kimble simultaneously moved for corrective relief. (ECF No. 20, Dec. 13, 2023.) But Kimble seems to have tacked on other items of relief. His motion also seeks equitable tolling of potential opt-in plaintiffs' claims. (*See id.*) Still, I set an expedited briefing schedule. Opteon filed opposition on December 22, 2023. (ECF No. 24.) Kimble replied on December 27. (ECF No. 25.) This motion is ready for decision.[3]

---

[2] I now **DENY** as moot the motion insofar as it sought oral argument.

## MAGISTRATE JUDGE JURISDICTION

If I can issue a decision and order on conditional certification of FLSA collective actions, then I may do likewise for similar pretrial motions. *See, e.g., Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 273 (S.D.N.Y. 2019) (Moses, M.J.) (denying conditional certification for lack of personal jurisdiction because). Courts generally hold that magistrate judges can issue such conditional certifications. *See Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 383 (E.D.N.Y. 2010) (quoting *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 265–66 (E.D.N.Y. 2005)) (noting that magistrate judges can issue decisions and orders on "conditional class certification" of a collective action); *accord Meyer v. Panera Bread Co.*, 344 F. Supp. 3d 193, 197 n.1 (D.D.C. 2018) (collecting cases). These courts deem conditional certification a "preliminary determination" that "is not dispositive." *Summa*, 715 F. Supp. 2d at 383 (cleaned up and citation omitted).

So too, then, with a motion for corrective notice. *Cf. Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 62 (D. Mass. 2018) (Robertson, M.J.) ("The failure to meet the relatedness requirement" of specific jurisdiction stated in *Bristol-Myers* "dooms Plaintiffs' request to issue notice of an FLSA collective action to FedEx Ground drivers who did

---

[3] I note that there is a separate letter motion pending about resetting the briefing schedule of Kimble's anticipated motion to compel identification of collective action plaintiffs. (ECF No. 22, Dec. 13, 2023.) I do not decide that motion here.

not work in Massachusetts."); *see also Patton*, 364 F. Supp. 2d at 267 (Orenstein, M.J.) (granting "application to circulate a notice of pendency"). Kimble's motion for corrective action is a "pretrial matter pending before the court." 28 U.S.C. § 636(b)(1)(A). And so, this is a decision and order.

## PERSONAL JURISDICTION

### *Congress designs the FLSA to enable collective actions, but has made each opt-in plaintiff a party.*

**Given its purpose, the FLSA enables collective actions.** Congress enacted the FLSA to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a); *see also Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 11 (2011) (noting that Section 202 sets out the FLSA's "basic objectives"). The FLSA thus permits employees who are "similarly situated" to sue a common employer in a "collective action." 29 U.S.C. § 216(b). But collective actions are a far cry from the garden variety Rule 23 class action, as I discuss next.

**Unlike class actions, each plaintiff is a party in a collective action.** In a collective action, each plaintiff is as much a plaintiff and party as every other plaintiff. *See id.* ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such

action is brought."). The first plaintiff is no different than the last plaintiff, making every collective action plaintiff akin to the party plaintiff in a Rule 23 class action. *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018) (quoting *Prickett v. Dekalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003)) (noting that under the FLSA, plaintiffs who join later have "the same status in relation to the claims of the lawsuit" as the original plaintiff).

This is quite unlike class actions where "as a practical matter, a defendant litigates against only the class representative." *Lyngaas v. Curaden AG*, 992 F.3d 412, 435 (6th Cir. 2021); *see also Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 297 (D.C. Cir. 2020) ("But unnamed class members are treated as nonparties for other purposes, including jurisdictional ones."). And so, any plaintiff in an FLSA action is a "party" as federal courts use that term. *See United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 932–33 (2009) (quoting *Black's Law Dictionary* 1154 (8th ed. 2004)) (defining a party as "[o]ne by or against whom a lawsuit is brought"). I thus conclude that I should analyze the personal jurisdiction question here outside of the Rule 23 context. I turn next to *Bristol-Myers* and its application to this case.

**Bristol-Myers *holds that this Court must have personal jurisdiction over each opt-in plaintiff's claim.***

Some background on personal jurisdiction is necessary before discussing why *Bristol-Myers* applies to this case. I begin with the applicable legal standard.

**The legal standard for personal jurisdiction has three components.** "Before a court may exercise personal jurisdiction over a defendant, three requirements must be met: (1) the plaintiff's service of process upon the defendant must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due process principles." *Fuld v. Palestine Liberation Org.*, 82 F.4th 74, 85 (2d Cir. 2023) (quoting *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp., PLC*, 22 F.4th 103, 121 (2d Cir. 2021)) (internal quotation marks omitted). The third requirement "recognizes and protects an individual liberty interest," flowing from "the Constitution's guarantees of due process." *Id.* (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). "The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause" and "represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Soos v. Niagara Cnty.*, 195 F.

13

Supp. 3d 458, 462 (W.D.N.Y. 2016) (quoting *Ins. Corp. of Ireland*, 456 U.S. at 702).

State courts have similar restraints that determine the scope of their jurisdiction: long-arm provisions or statutes. *See, e.g.*, C.P.L.R. 301(a)(2). Long-arm provisions map onto federal courts through Fed. R. Civ. P. 4(k)(1)(A). *See Daimler A.G. v. Bauman*, 571 U.S. 117, 125 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). They apply to federal courts through Rule 4(k)(1)(A) only if the federal statute supplying the cause of action "does not authorize" nationwide "service of summons." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 (1987).

**Fed. R. Civ. P. 4(k)(1)(A) governs.** Because the FLSA does not provide for service of summons nationwide, Rule 4(k)(1)(A) governs. *Pettenato*, 425 F. Supp. 3d at 273 ("The FLSA does not provide for nationwide service of process.") (collecting cases). Under this rule, federal district courts may "assert personal jurisdiction … on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting Fed. R. Civ. P. 4(k)(1)(A)). To determine if this Court has specific jurisdiction under Rule 4(k)(1)(A), I therefore must "ask whether the exercise of jurisdiction 'comports with the limits imposed by federal due process.'" *Id.* (quoting *Daimler*, 571 U.S. at 126).

Application of this rule means that if New York State courts lack personal jurisdiction over the out-of-state plaintiffs looking to join Kimble's collective action, so does this Court. *See Fischer v. Fed. Express Corp.*, 42 F.4th 366, 383 (3d Cir. 2022), *cert. denied*, 143 S. Ct. 1001 (2023) (holding that the federal court was "limited by the Fourteenth Amendment … because Rule 4(k)(1)(A) does not authorize jurisdiction broader than what would be permissible for a state"). Under *Bristol-Myers*, New York State—and thus this Court—lack specific jurisdiction over the out-of-state claims.

**Bristol-Myers requires a connection between each claim and the forum.** The Supreme Court's decision in *Bristol-Myers* continues a line of cases holding that "there must be 'an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." 582 U.S. at 262 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also id*. at 264 (same). But *Bristol-Myers* went further, holding that a claim-based approach is necessary when evaluating personal jurisdiction. *Id*. at 265 (noting that the "mere fact that *other* plaintiffs" can establish personal jurisdiction "does not allow the State to assert specific jurisdiction" over claims brought by out-of-state plaintiffs lacking any other connection to the forum) (emphasis in original). Each plaintiff's claim needs

a connection because "a defendant's relationship with a … third party, standing alone, is an insufficient basis for jurisdiction." *Id*. (quoting *Walden*, 571 U.S. at 286). Absent a "connection between the forum and the specific claims at issue," then, this Court may not exercise specific personal jurisdiction over a plaintiff's claims under the Fourteenth Amendment. *Id*.

Since then, courts have debated if *Bristol-Myers* applies to FLSA collective actions. Most circuits to hear this issue have held that *Bristol-Myers* applies to the claims of out-of-state FLSA opt-in plaintiffs. *Canaday v. Anthem Companies*, 9 F.4th 392 (6th Cir. 2021); *Vallone v. CJS Sols. Grp., LLC*, 9 F. 4th 861 (8th Cir. 2021); *Fischer*, 42 F.4th 366; *but see Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84 (1st Cir.), *cert. denied*, 142 S. Ct. 2777 (2022). The reasoning of the Sixth, Eighth, and Third Circuits persuades me. Here, "every plaintiff who seeks to opt in to the suit must demonstrate his or her claim arises out of or relates to the defendant's minimum contacts with" New York State. *Fischer*, 42 F.4th at 370. But they have not done so.

### This Court lacks personal jurisdiction over out-of-state opt-in plaintiffs.

Applying Rule 4(k)(1)(A), I find that specific jurisdiction is lacking here for out-of-state plaintiffs who did not work in New York State or reside in New York State during the period in which Opteon allegedly violated the FLSA. *See Indelicato v. Liberty Transportation, Inc.*, No. 18-

CV-253, 2018 WL 3834074, at *7 (W.D.N.Y. Aug. 16, 2018), *adopted*, 2019 WL 1506931 (W.D.N.Y. Apr. 6, 2019) (quoting *Bristol-Myers*, 582 U.S. at 264) ("In order for a court to exercise specific jurisdiction over a claim, there must be 'an affiliation between the forum and the underlying controversy[.]'" But "[w]hen there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.") (alterations added). Kimble has not shown (or pled) any meaningful connection between the claims of out-of-state plaintiffs and New York State.

Here, "none of the other" potential or actual out-of-state opt-in plaintiffs here "have demonstrated any nexus between their respective employment with [Opteon] and their related" FLSA claims "within New York State," meaning that "their claims cannot support personal jurisdiction." *Goldowsky v. Exeter Fin. Corp.*, No. 15-CV-632A(F), 2021 WL 695063, at *4 (W.D.N.Y. Feb. 23, 2021). The out-of-state plaintiffs' claims here do not meet the relevant personal jurisdiction requirements the Supreme Court announced in *Bristol-Myers*.

My conclusion is reinforced by the similarity of FLSA collective actions to the mass tort cases involved in *Bristol-Myers*. As I discussed, FLSA collective actions are a far cry from garden variety Rule 23 class actions. The opt-in plaintiffs following Kimble are just as much plaintiffs as Kimble was when he brought this suit. Mass tort actions are much

the same.  *See* Jud. Ctr., Manual for Complex Litigation (Fourth) § 22.1 (2004) ("A mass tort is defined by both the nature and number of claims; the claims must arise out of an identifiable event or product, affecting a very large number of people and causing a large number of lawsuits asserting personal injury or property damage to be filed."); *see also Pettenato*, 425 F. Supp. 3d at 279 (making a similar comparison).

Even cases like *Hoffman-La Roche*, which tout the FLSA's purpose, have acknowledged that every plaintiff is a party in a collective action by referring to the "joinder" of parties into a collective action. 493 U.S. 165, 168, 171 (explaining that a worker filing an opt-in form "fulfill[s] the statutory requirement of joinder" and that decision regarding notice are based on courts' "managerial responsibility to oversee the joinder of additional parties"). This is helpful context: one of the main counterarguments to my holding here involves the FLSA's purpose.

***District courts' counterarguments are unpersuasive.***

Many district courts have found the opposite, holding that *Bristol-Myers* does not apply to FLSA collective actions. Their reasoning is unpersuasive.

**While the FLSA's intent may be to provide nationwide relief to workers, it is up to Congress to fix the FLSA—not me.** Some courts reason that to apply *Bristol-Myers* to FLSA collective actions would "trespass on the expressed intent of Congress." *Swamy v. Title*

*Source, Inc.*, No. C 17-01175 WHA, 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017) (citing 29 U.S.C. §§ 202 & 207(a)). After all, Congress enacted the FLSA to fight harmful employment practices nationwide—not state-to-state. *See Hoffman-La Roche*, 493 U.S. at 170 (noting a collective action affords plaintiffs the "advantage of lower individual costs to vindicate rights by the pooling of resources" and "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact"). Indeed, I quoted such language both here and above.

I agree with all that these courts have stated. But I cannot legislate to fill the service of process gap in the FLSA. "We" judges "do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason. We take the statute as we find it." *Anderson v. Wilson*, 289 U.S. 20, 27 (1933) (Cardozo, J.). And I cannot cover my ears when the Supreme Court announces a requirement for claim-by-claim analysis. My obligation to follow the law "cannot be overshadowed by 'even the most compelling' policy arguments." *Pettenato*, 425 F. Supp. 3d at 280 (quoting *Chavira v. OS Rest. Servs., LLC*, No. 18-CV-100290ADB, 2019 WL 4769101, at *6 (D. Mass. Sept. 30, 2019)).

I have several responses to those who would reject this decision based on public policy. *First*, federal judges are not elected. Given that,

this problem is best solved in a public forum—with public input. Solving problems with the FLSA is for Congress—not me.

*Second*, and relatedly, because federal judges are not legislators, there is no guarantee that they have correctly divined congressional intent here. Had Congress intended the FLSA to skirt Rule 4(k)(1)(A) by providing for nationwide service of process, it could have said so. It did not.

*Finally*, applying *Bristol-Myers* to FLSA collective actions hardly kneecaps collective actions as much as Kimble asserts. "Applying *Bristol-Myers* to FLSA collective actions will *not* prevent a nationwide FLSA collective of plaintiffs from 'joining together in a consolidated action' in a state that has general jurisdiction over" the defendant. *Pettenato*, 425 F. Supp. 3d at 280 (quoting *Bristol-Myers*, 582 U.S. at 268) (emphasis in original). In any event, Kimble has the option to try to move this case to an appropriate forum under 28 U.S.C. § 1406(a). I make no comment on the merits of such a motion, though.

**FLSA collective actions are not meaningfully distinguishable from the mass action *Bristol-Myers*.** Still other courts harp on the factual distinctions between *Bristol-Myers* and FLSA collective actions. *See, e.g., Gilburd v. Rocket Mortg., LLC*, No. CV-23-00010-PHX-DLR, 2023 WL 8480062, at *5 (D. Ariz. Dec. 7, 2023) (quoting *Cooley v. Air Methods Corp.*, No. CV-19-00850-PHX-DLR, 2020 WL 9311858, at

*3 (D. Ariz. Sept. 25, 2020)) ("The courts, including this one, that decline to apply *Bristol-Myers* to FLSA cases reason that unlike in *Bristol-Myers*, which involved a products liability claim, FLSA claims involve a 'federal claim specifically created by Congress to address employment practices nationwide' and that applying *Bristol-Myers* to such claims would thwart congressional intent."). But some distinctions make no difference.

The Supreme Court announces "general principle[s]," and it did so in *Bristol-Myers*, holding that due process requires a "connection between the forum and the specific claims at issue." *Roy*, 353 F. Supp. 3d at 55 (quoting *Chavez v. Church & Dwight Co.*, No. 17 C 1948, 2018 WL 2238191, at *10 (N.D. Ill. May 16, 2018)) ("Nothing in *Bristol-Myers* suggests that its basic holding is inapplicable to class actions; 'rather, the Court announced a general principle—that due process requires a 'connection between the forum and the specific claims at issue.'"). Courts cannot artificially narrow the principle the Supreme Court has announced.

So, rather than try to narrow *Bristol-Myers*, I follow the principle the Supreme Court has articulated. And as I have already discussed, FLSA collective actions are much more like the California mass action involved in *Bristol-Myers* than Rule 23 class actions. The California law permitting the mass action in *Bristol-Myers* is for all "civil actions

sharing a common question of fact or law." Cal. Civ. Proc. Code § 404. Under the California rule and the FLSA, each plaintiff is a party.

Further, Courts have begun to recognize that mass actions like those under the California rule and the FLSA are susceptible to *Bristol-Myers. See, e.g., Baity v. Johnson & Johnson*, No. 3:20-CV-01367-NJR, 2021 WL 1401460, at *3 (S.D. Ill. 2021) (holding venue improper for personal jurisdiction reasons where "each [p]laintiff appears [to] have purchased, been prescribed, or otherwise obtained the device in question in his/her own home district, and there is no indication that the nonresident [p]laintiffs have any connection to events or omissions relating to Defendant's products in this district") (alterations added); *see also Roy*, 353 F. Supp. 3d at 56–57 ("District courts generally have extended the specific jurisdiction principles articulated in *Bristol-Myers* to the analysis of personal jurisdiction over named plaintiffs in federal class actions."). For the foregoing reasons, I hold that this Court lacks personal jurisdiction over out-of-state plaintiffs who did not work for Opteon in New York and did not reside in New York during the period in which Opteon allegedly was violating the FLSA. I accordingly **DENY** Kimble's motion for corrective action as to those persons.

## CORRECTIVE NOTICE

The FLSA makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted

any proceeding under or related to" the FLSA. 29 U.S.C. § 215(a)(3). The Supreme Court has noted that "fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions." *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960). And the Second Circuit has stated that retaliatory acts "carr[y] … the distinct risk that other employees may be deterred from protecting their rights … or from providing testimony for the plaintiff in her effort to protect her own rights." *Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 91 (2d Cir. 1983) (alteration added).

### *The applicable legal standard gives me wide discretion.*

District courts have wide discretion to alleviate such fears and risks. *See Hoffman-La Roche*, 493 U.S. at 169–71 (1989) (affirming the power of district courts to exercise control over collective actions). That the court's role is primarily one of management does not diminish this discretion. *See id*. at 170 ("Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure."). Rather, I should be prepared to ensure that the process is fair. *See id*. at 169–71; *see also* Fed. R. Civ. P. 83(b)

(permitting courts to "regulate their practice in any manner consistent with" federal or local rules).

***I find that a hearing on corrective notice—and the other relief Kimble seeks—is warranted if Kimble would want it.***

Under the wide discretion that the FLSA and case law affords, I note that Opteon's mid-lawsuit effort to roll out an arbitration agreement may well have been confusing and unfair to potential opt-in plaintiffs. *See Hoffman–La Roche*, 493 U.S. at 171. Corrective action may be appropriate given my responsibility to "avoid such prejudice and impropriety and to ensure the potential plaintiffs have a fair opportunity to opt-in to" Kimble's collective action. *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 921 (11th Cir. 2014) (citing Fed. R. Civ. P. 83) (alterations added). This is true no matter how the new agreement is labeled. Opteon cannot say "voluntary" if, in the same breath, it told employees to sign the agreement or leave.

Because I do not have a sufficient factual basis for corrective action before me, however, I find it appropriate to **RESERVE** ruling on the portion of Kimble's motion seeking the same. I will permit Kimble to request a hearing on corrective action for those plaintiffs over which this Court has jurisdiction. *See, e.g., Abdul-Rasheed v. KableLink Commc'ns, LLC*, No. 8:13-CV-879-T-24 MAP, 2013 WL 6182321, at *2 (M.D. Fla. Nov. 25, 2013) (making finding of fact from evidentiary hearing that if employees "did not sign" an arbitration agreement "within 30 days,

Defendants told them that Defendants would no longer give them any work"); *see also Billingsley*, 560 F. App'x at 917 (noting that the district court "held a hearing" and made findings of fact regarding corrective action).

## EQUITABLE TOLLING

The FLSA provides for a two-year statute of limitations generally, allowing courts to extend that time to three years if the employer's violation of the FLSA was "willful." 29 U.S.C. § 255(a). Courts will equitably toll these statutes of limitations "to avoid inequitable circumstances." *Asp v. Milardo Photography, Inc.*, 573 F. Supp. 2d 677, 697 (D. Conn. 2008).

### The standard Kimble must meet for equitable tolling is high.

"Equitable tolling is considered a drastic remedy applicable only in 'rare and exceptional circumstances.'" *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)) (cleaned up). "The doctrine of equitable tolling applies after the claim has already accrued, suspending the statute of limitations 'to prevent unfairness to a diligent plaintiff.'" *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 801 (2d Cir. 2014) (quoting *Haekal v. Refco, Inc.*, 198 F.3d 37, 43 (2d Cir. 1999)) (cleaned up). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently;

and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

**Kimble fails to address all relevant elements regarding equitable tolling.**

Here, Kimble "provides no facts or even arguments regarding existing or potential opt-in plaintiffs that reflect that these employees of the defendants have been pursuing their rights diligently." *Contrera v. Langer*, 278 F. Supp. 3d 702, 723 (S.D.N.Y. 2017) (cleaned up). Kimble has not filed any affidavits or shown specific facts about the diligence element. But this is "a highly factual issue that depends on what and when a plaintiff knew or should have known" about their FLSA claim, which is "an inquiry that is simply impossible to conduct when opt-in plaintiffs and the facts specific to them have not yet been revealed." *Id.* at 723–24 (quoting *Alvarado Balderramo v. Taxi Tours Inc.*, No. 15 Civ. 2181 (ER), 2017 WL 2533508, at *5 (S.D.N.Y. June 9, 2017)).

That being the case, I "have no basis for making a ruling at this time that any current or future opt-in employees' claims must be equitably tolled given that there has been no showing that they have met the 'diligence' prong of the equitable tolling doctrine." *Contrera*, 278 F. Supp. 3d at 725; *see also Perez Perez v. Escobar Constr., Inc.*, 540 F. Supp. 3d 395, 408–09 (S.D.N.Y. 2021). True, Kimble may argue that Opteon's new employment agreement is an exceptional circumstance, but until the first prong is met with specific facts, I decline to toll the

FLSA's statute of limitations. So I **DENY** Kimble's request for equitable tolling with leave to renew.

### CONCLUSION

For the foregoing reasons, I **RESERVE** on portions of Kimble's motion for corrective action and equitable tolling and **DENY IN PART** his motion. (ECF No. 20.) I also **DENY** as moot the remaining portion of Kimble's motion for expedited hearing, (ECF No. 19), insofar as it sought oral argument on the motion for corrective relief and equitable tolling. (ECF No. 20.) Kimble may request an evidentiary hearing for me to make findings of fact and conclusions of law concerning corrective action. Kimble must do so within 14 days of the date of this order.

**Additionally,** within 14 days of the date of this order, I direct the parties to do the following:

1. Determine next steps as to the out-of-state plaintiffs who have already opted into Kimble's action:

    a. I direct the parties to meet and confer about if these claims should be dismissed or if this action (or the claims) should be transferred to another jurisdiction. **Any stipulation and proposed order regarding dismissal or transfer must be filed within 14 days of this order.**

      b.      Absent such a stipulation, I direct the parties to propose a briefing schedule for any motions they believe are appropriate, or to propose a briefing schedule for appealing portion(s) of my decision to the Hon. Frank P. Geraci, Jr., Senior District Judge.

2.      Finally, I give the parties leave to propose amended scheduling deadlines since my decision here may impact motions the parties planned to file.

**IT IS SO ORDERED.**

Dated:      January 19, 2024
                       Rochester, NY

_____
MARK W. PEDERSEN
United States Magistrate Judge