UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
SCOTT KIMBLE, individually, and on behalf of others similarly situated,

                Plaintiff,

-against-

OPTEON APPRAISAL, INC.
                Defendant
-------------------------------------------------------X

Civil Action No. 23 Civ. 6399-FPG-MJP

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TRANSFER VENUE**

MENKEN SIMPSON & ROZGER LLP

By:   Bruce E. Menken

80 Pine Street, 33rd Floor

New York, NY 10005

Tel. (212) 509-1616

Fax (212) 509-8088

bmenken@nyemployeelaw.com

BRYAN SCHWARTZ LAW, P.C.

By:   Bryan Schwartz (Admitted Pro Hac Vice)

180 Grand Avenue, Suite 1380

Oakland, CA 94612

Tel. 888-891-8489

ATTORNEYS FOR PLAINTIFF AND PROPOSED CLASS

i

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  FACTUAL AND PROCEDURAL HISTORY .............................................................. 1

   A.  Procedural History ................................................................................................ 1

   B.  Additional Facts Relevant to Plaintiff's Motion to Transfer Venue ..................... 3

III. ARGUMENT ................................................................................................................. 4

   A.  Venue is Proper in the Northern District of Illinois .............................................. 5

   B.  The Convenience Factors Favor the Northern District of Illinois ........................ 5

   C.  The Jurisdiction's Familiarity with the Law and the Plaintiff's Choice of Forum are Neutral .................................................................................................................... 8

   D.  The Interests of Justice Require Transfer to the Northern District of Illinois ............ 9

   E.  The Court Should Not Impose a Heightened Standard of Plaintiff, but if it Does, Plaintiff Meets that Standard Here ...................................................................... 10

IV.  CONCLUSION ............................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49 (2013) ........................ 6

*Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016) ....................................................... 5

*Burke v. Bimbo Bakeries USA, Inc.*, No. 519CV902MADATB, 2020 WL 4597319
 (N.D.N.Y. May 14, 2020) ............................................................................................................ 10

*Cesarani v. Armstrong World Indus., Inc.*, No. CIV-86-82E, 1986 WL 12487
 (W.D.N.Y. Nov. 4, 1986) .............................................................................................................. 5

*D'Amato v. ECHL, Inc.*, No. 13CV646S, 2015 WL 2151825 (W.D.N.Y. May 7, 2015). ............... 4

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) .............................................................. 9

*In re Gerber Prod. Co. Baby Food Litig.*, No. 21-1977 (CCC), 2021 WL 4148107
 (D.N.J. Sept. 13, 2021) ................................................................................................................. 11

*In re Warrick*, 70 F.3d 736 (2d Cir. 1995) ....................................................................................... 7

*Kruly v. Akoustis Techs., Inc.*, No. 21-CV-6181-FPG, 2021 WL 4316558
 (W.D.N.Y. Sept. 23, 2021) ............................................................................................................ 8

*Megna v. Biocomp Lab'ys Inc.*, 220 F. Supp. 3d 496 (S.D.N.Y. 2016) ......................................... 10

*Mola, Inc. v. Kacey Enterprises*, LLC, No. 10-CV-1045S, 2011 WL 3667505
 (W.D.N.Y. Aug. 21, 2011) ............................................................................................................ 8

*Nat'l Experiential, LLC v. Nike, Inc.*, No. 120CV3197ENVSIL, 2021 WL 9678642
 (E.D.N.Y. July 31, 2021) ............................................................................................................. 10

*New York v. Green*, 420 F.3d 99 (2d Cir. 2005) .............................................................................. 9

*Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391 (S.D.N.Y. 2004) ............................... 10

*Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502 (2d Cir. 2020) .................................................. 9

*Stewart v. First Student, Inc.*, 639 F. Supp. 3d 492 (E.D. Pa. 2022) ........................................... 5, 9

*Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366

   (W.D.N.Y. 2018) ........................................................................................................................ 7

*UMG Recordings, Inc. v. Archive*, No. 23 CIV. 7133 (LGS), 2023 WL 8520587

   (S.D.N.Y. Dec. 8, 2023) ........................................................................................................... 7

**Statutes**

28 U.S.C. § 1391(b) ............................................................................................................................ 9

28 U.S.C. § 1404(a) ........................................................................................................................ 8, 9

I. INTRODUCTION

Plaintiff filed this case to challenge Defendant's policy of failing to pay overtime to Real Estate Staff Appraisers when they work over 40 hours in a week. He sought to pursue these claims on behalf of a nationwide Fair Labor Standards Act ("FLSA") Collective comprised of all similarly situated Real Estate Staff Appraisers in the United States. But this Court ruled that it does not have personal jurisdiction over Defendant Opteon Appraisal, Inc. ("Defendant" or "Opteon") as to appraisers who neither lived nor worked in New York during the time period covered by the case. As such, for no reason other than the venue where this case sits, Plaintiff is prevented from securing the justice he seeks. Plaintiff therefore seeks an order transferring this case to the Northern District of Illinois, where Defendant asserts it maintains its principal place of business.[1]

II. FACTUAL AND PROCEDURAL HISTORY

A. Procedural History

Plaintiff Scott Kimble filed this case on July 14, 2023. (ECF No. 1.) He alleged in his complaint that Defendant Opteon was incorporated in Delaware and had its principal place of business in Arizona. (Compl., ECF No. 1 ¶ 5.) Defendant Opteon Appraisal, Inc. ("Opteon") answered on September 29, 2023. (ECF No. 6.) In its answer, Opteon alleged that it was a Delaware Corporation with a principal place of business in Rosemount, Illinois. (ECF No. 6, ¶ 5.) Opteon repeated this assertion in the Declaration of Ben Clark filed in opposition to Plaintiff's Motion for Corrective Relief and Equitable Tolling, dated December 22, 2023. (ECF No. 24-4, ¶ 3.) Rosemount, Illinois is a suburb of Chicago, and is therefore in the Northern

---

[1] Because Plaintiff seeks transfer of this matter, Plaintiff requests that the Court continue to reserve ruling on Plaintiff's motion for corrective notice at this time. (*See* ECF No. 26 at 24.)

1

District of Illinois.

Opteon also asserted in its answer that the Court lacked personal jurisdiction over members of the putative FLSA Collective who neither resided nor worked in New York. (*Id.* p. 10, First Affirmative Defense.). Opteon repeated this assertion in the parties' Proposed Discovery Plan. (ECF No. 12, ¶ 7.)

On December 13, 2023, Plaintiff filed a Motion for Corrective Relief and Equitable Tolling, based on Defendant's post-suit communications eliciting arbitration agreements from members of the putative collective. (ECF No. 20.) As part of that submission, Plaintiff included Opteon's new employment agreement[2], which includes an explicit venue provision: "You irrevocably consent to the exclusive jurisdiction of the state and federal courts located in Cook County, Illinois, for the purposes of any action or proceeding relating to or arising out of this Employment Plan and/or your employment with the Company." (ECF No. 21-2 at 7–8.)

Opteon opposed the relief Plaintiff sought, arguing that the Court does not have personal jurisdiction over member of the putative FLSA Collective who neither worked nor resided in New York. (ECF N. 24, pp. 6-7.) On January 19, 2024, this Court issued an order accepting Opteon's argument and finding that it lacks personal jurisdiction over employees who neither worked nor resided in New York during the relevant time period. (ECF No. 26.) The Court further ordered the parties to meet and confer about whether "this action (or the claims [of out of state plaintiffs] should be transferred to another jurisdiction." (*Id.*)

Plaintiff followed the Court's order and attempted to meet and confer with Opteon regarding transfer. (Menken Dec. ¶ 2.) Plaintiff proposed transferring the case to Arizona or

---

[2] Plaintiff does not concede the employment agreement and related documents are enforceable; instead, Plaintiff notes that in its own documents Defendant voluntarily selected Illinois as its preferred forum.

2

Illinois. (*Id.*) Defense counsel declined Plaintiff's request to stipulate and would not provide a basis for its refusal. (*Id.*)

### B. Additional Facts Relevant to Plaintiff's Motion to Transfer Venue

Plaintiff, like many other appraisers, worked remotely from his home. (Kimble Dec. ¶ 4.) He submitted appraisal reports electronically. (*Id.*) While Opteon maintained a Buffalo office, Opteon's operations were not based there and Plaintiff rarely went there. (*Id.* ¶ 5.) Instead, Plaintiff frequently participated remotely in meetings held in Chicago, and understood that Opteon's key employees were located in Chicago. (*Id.* ¶¶ 5–7.) Plaintiff also worked with people from across the country, including IT employees in California and support staff in Arizona, not just people who lived in New York. (*Id.* ¶ 10.)

Importantly, Plaintiff's supervisor, and the employees above Plaintiff's supervisor, were based in Chicago. (*Id.* ¶ 6–8.) In Defendant's Interrogatory Responses, Defendant identified two individuals (Jessica Strum, Executive Vice President, and William Salus, Northeast Regional Manager) who "communicated with Staff Appraisers in New York concerning new employment-related agreements" – both of those individuals are based in Chicago. (Menken Dec. Ex. A, Rog. Resp. No. 4; Kimble Dec. ¶¶ 6–7.) Defendant also identified Ms. Strum and Mr. Salus among the individuals who "supervise other Staff Appraisers in New York," along with Jessica Jenkins Tome, the Chief Appraiser (based in Chicago), and two individuals Defendant identifies as "Team Leads."[3] (Rog. Resp. No. 2; Kimble Dec. ¶ 7.) In other words, Defendant recognizes that

---

[3] The two "Team Leads" were based in New York. (Kimble Dec. ¶¶ 8–10.) However, Plaintiff understood that one of the "Team Leads," Mike Rizzo, lost the "Lead" role, and his supervisor duties were transferred to the Regional Manager in Chicago; the other individual was never Plaintiff's supervisor. (*Id.*)

3

even when only considering appraisers in New York, important supervisors are located in Chicago.

### III. ARGUMENT

Plaintiff moves to transfer venue to the Northern District of Illinois based on Opteon's argument, and the Court's order, that the Court does not have personal jurisdiction over members of the putative FLSA Collective who neither worked nor resided in New York. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought …" 28 U.S.C. § 1404(a). "When considering a motion to transfer under § 1404(a), courts in this circuit consider a number of factors, including: (1) the convenience of witnesses and parties; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the locus of the operative facts; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the relative financial means of the parties; (6) the comparative familiarity of each district with the governing law; (7) the weight afforded plaintiff's choice of forum, and (8) judicial economy and the interests of justice." *D'Amato v. ECHL, Inc.*, No. 13CV646S, 2015 WL 2151825, at *6 (W.D.N.Y. May 7, 2015).

Here, the Court should grant Plaintiff's motion to transfer venue because 1) this case could have been brought in the Northern District of Illinois; 2) since Opteon asserts that its principal place of business is within the Northern District of Illinois, Opteon cannot credibly argue that the convenience factors weight against transfer; and 3) the interests of justice require transfer, where Opteon seeks to hide behind this Court's lack of personal jurisdiction to avoid facing a nationwide FLSA collective action. *See, e.g., Stewart v. First Student, Inc.*, 639 F. Supp.

4

3d 492, 503 (E.D. Pa. 2022) (granting plaintiffs' motion to transfer venue in FLSA collective action where there was no personal jurisdiction over the nationwide FLSA collective).

### A. Venue is Proper in the Northern District of Illinois

The first step in the Court's analysis on a motion to transfer venue is to determine whether the case could have been brought in the proposed transfer district. *Cesarani v. Armstrong World Indus., Inc.*, No. CIV-86-82E, 1986 WL 12487, at *1 (W.D.N.Y. Nov. 4, 1986) (citing 28 U.S.C. § 1404(a)). Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b). Because there is only one defendant here, venue is proper where Opteon resides.

A defendant corporation resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction . . . ." 28 U.S.C. § 1391(c)(2). And a corporation is at home, for purposes of general personal jurisdiction, where it is incorporated and where it maintains its principal place of business. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016). Here, because Opteon claims to have its principal place of business in Rosemount, Illinois, *see* ECF No. 24-4, ¶ 3, venue is proper in the Northern District of Illinois.

### B. The Convenience Factors Favor the Northern District of Illinois

The first two venue transfer factors – the convenience of witnesses and parties and the location of relevant documents and the relative ease of access to sources of proof—favor transfer to the Northern District of Illinois. Plaintiff and members of the putative collective work remotely, from home, and are spread across the country. (Compl., ECF No. 1, ¶¶ 4, 6.) Plaintiff's supervisor, and key decisionmakers within Opteon's appraisal business worked in Chicago. (*See supra* § II.B.) All supervisors, from the Regional Manager level and above, were based in Chicago. On the other hand, only two local-level employees described as "Team Leads" were

5

located in Buffalo. Those individuals are not likely to be relevant witnesses, since one never supervised Plaintiff (Kimble Dec ¶ 10), and the other had his supervisory duties shifted to the Regional Manager (*id.* ¶ 8). More significantly, team leads did not determine how appraisers were paid, or how much they had to work; those decisions were made at a higher corporate level. (*Id.* ¶ 9.) To the extent team leads are relevant, they are likely to be spread geographically throughout the country, since other appraisers also worked with team leads. (*Id.* ¶ 8.) Moreover, Opteon's general counsel signed his declaration in Chicago, Illinois, and therefore presumably works from Opteon's corporate headquarters. (*See* ECF No. 24-4.) To Plaintiff's knowledge, Opteon's operations were focused in Chicago, the main supervisors were located in Chicago, decisions about appraiser pay and work hours were communicated from corporate decisionmakers in Chicago. Plaintiff accomplished his work electronically, meaning that relevant documents were uploaded to a company server, rather than maintained in hard copy in Plaintiff's home office. (Kimble Dec. ¶ 4.)

The convenience of an Illinois venue for Defendant is apparent from Opteon's decision to include a venue provision in its new employment agreements.[4] (*See* ECF No. 21-2 at 7–8.) When parties have agreed to a specific forum, the considerations on a motion to transfer change: "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 64 (2013). Here, Defendant selected the forum to which Plaintiff seeks to transfer this

---

[4] Plaintiff did not sign the version of the employment agreement containing the venue provision, so Plaintiff does not seek transfer based on that clause, nor does Plaintiff concede that agreement – or the arbitration agreement connected to it – is enforceable.

6

case for employment related disputes with other employees, so Defendant should not now claim that forum would be inconvenient for it to litigate Plaintiff's claims.

"When analyzing the convenience to the parties, courts often look to the parties' principal places of business and the location of their offices." *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 376 (W.D.N.Y. 2018). Here, where Plaintiffs assert a nationwide FLSA Collective, Defendant cannot credibly argue that the Western District of New York would be more convenient than the district where it maintains its principal place of business. *See*, *e.g.*, *In re Warrick*, 70 F.3d 736, 741, n.7 (2d Cir. 1995) (in putative class action, convenience factors favor venue where defendant maintains its principal place of business). That is especially true where Plaintiffs worked from home, reported to supervisors in other locations and completed their work electronically. To the extent witnesses are centralized anywhere, they are likely centralized in Illinois. Moreover, any relevant documents are just as easily obtainable in Illinois as they would be in New York. *See*, *e.g.*, *UMG Recordings, Inc. v. Archive*, No. 23 CIV. 7133 (LGS), 2023 WL 8520587, at *3 (S.D.N.Y. Dec. 8, 2023) (noting that, in the digital age, the location of documents is of little importance in the transfer analysis); *Ocean Reef Charters LLC*, 324 F. Supp. 3d at 378 (same). The convenience of witnesses and parties and the location of documents supports Plaintiff's request to transfer to the Northern District of Illinois.

The third factor—locus of operative facts—also favors transfer. In many employment cases, the locus of operative facts is where the work is performed—such as in a factory, at an office, or in some other common work location. In workplaces where supervisors and plaintiff employees work in the same location, the operative facts arise at that work location. But in a nationwide FLSA collective, relevant facts are just as likely to emanate from corporate headquarters as from employee work locations. Indeed, Plaintiff worked with people from across

7

the country, including IT employees in California and support staff in Arizona, not just people who lived in New York. (Kimble Dec. ¶ 10.) And in cases, like here, where the putative FLSA collective worked remotely, alone, from their own homes, the operative facts are not bound by geography. It is therefore likely that greater locus of facts arose from Illinois than from the Western District of New York. As such this factor favors transfer, or at the very least is neutral.

For these same reasons, the availability of process to compel unwilling witnesses (the fourth factor) also favors transfer. Plaintiff worked in this district, but his supervisor did not. While some witnesses may reside in this district, the most relevant witnesses – Plaintiff's supervisor and Defendant's corporate decisionmakers – are in Illinois. (*See* Kimble Dec. ¶¶ 6–9.) It is far more likely that unwilling witnesses reside in Illinois, the location of Defendant's principal place of business, and would therefore be within the subpoena power of the Northern District of Illinois. *See* Fed. R. Civ. P. 45(c).

Lastly, the relative financial means of the parties weighs in favor of transfer. Opteon cannot credibly argue that transferring the case to a district where it resides would cause an undue financial burden. On the other hand, Plaintiff has far fewer financial resources than a corporate defendant, but regardless is willing to travel to the Northern District of Illinois for deposition and trial. (Kimble Dec. ¶ 3.) The relative financial means of the parties therefore favors transfer.

### C. The Jurisdiction's Familiarity with the Law and the Plaintiff's Choice of Forum are Neutral

Where a case arises under federal law, like this case, the courts' familiarity with the substantive law is a neutral factor in the venue transfer analysis. *Mola, Inc. v. Kacey Enterprises, LLC*, No. 10-CV-1045S, 2011 WL 3667505, at *9 (W.D.N.Y. Aug. 21, 2011); *Kruly v. Akoustis*

8

*Techs., Inc.*, No. 21-CV-6181-FPG, 2021 WL 4316558, at *1 n. 1 (W.D.N.Y. Sept. 23, 2021); *see also Stewart*, 639 F. Supp. 3d at 500. Likewise, Plaintiff concedes that a plaintiff's choice of forum is neutral, when the plaintiff is the moving party on a motion to transfer venue. *See Stewart*, 639 F. Supp. 3d at 499.

### D. The Interests of Justice Require Transfer to the Northern District of Illinois

The interests of justice should be the Court's primary inquiry on this motion, since the only reason for Opteon to oppose transfer to the Northern District of Illinois would be to avoid a nationwide collective action.[5] It would surely be more convenient for Opteon to litigate where it is at home, rather than in the Western District of New York. This case is in its early stages and the Court has not issued any substantive rulings.[6] Therefore, there is no prejudice to Opteon in transferring venue. The only perceivable downside to Opteon in a transfer is the potential increase in exposure for a nationwide FLSA Collective. Justice has no interest in allowing a defendant to hide behind jurisdictional barriers when a plaintiff offers to remove them.

On the other hand, Justice has a great interest in allowing claims to be heard on the merits. *See, e.g.*, *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (articulating "a strong preference for resolving disputes on the merits") (internal quotes and citation omitted)). The FLSA's collective action mechanism is meant to allow Plaintiffs to pool their resources and create an "'efficient resolution of common issues of law and fact arising from the same alleged' FLSA violation." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020) (*quoting*

---

[5] Plaintiff's Counsel asked Defense Counsel why Defendant would not stipulate to transfer, and Defense Counsel would not provide a reason. (Menken Decl. ¶ 2.)

[6] Were this case to proceed in this Court, the next step would be a resolution of Plaintiff's motion for corrective notice, but such a ruling would be limited to appraisers who worked in New York, leading to the need for further proceedings in other jurisdictions and a risk of inconsistent rulings. The interests of justice and efficiency favor one uniform decision on this and other important issues.

9

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). If that statutory purpose can be accomplished while honoring this Court's jurisdictional limits, then justice favors that result. Absent transfer, Plaintiff would have to continue with a New York only collective action in this Court, while appraisers who worked in other states pursue their claims in a separate action, or multiple actions. Interests of judicial efficiency counsel against that approach. The Court should therefore grant Plaintiff's motion to transfer venue to the Northern District of Illinois.

### E. The Court Should Not Impose a Heightened Standard of Plaintiff, but if it Does, Plaintiff Meets that Standard Here

In opposition to this motion, Defendant may point to a handful of New York district court decisions holding that a plaintiff seeking to transfer venue "must show a change in circumstances since the filing of suit." *Megna v. Biocomp Lab'ys Inc.*, 220 F. Supp. 3d 496, 498 (S.D.N.Y. 2016). Other courts in this Circuit have held, however, that a plaintiff moving to transfer may show either a change in circumstances *or* that transfer would be "'in the interests of justice,' particularly where there would be severe prejudice to a plaintiff." *Burke v. Bimbo Bakeries USA, Inc.*, No. 519CV902MADATB, 2020 WL 4597319, at *3 (N.D.N.Y. May 14, 2020) (quoting *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 407 (S.D.N.Y. 2004)); *see also Nat'l Experiential, LLC v. Nike, Inc.*, No. 120CV3197ENVSIL, 2021 WL 9678642, at *4 (E.D.N.Y. July 31, 2021) ("With the Second Circuit yet to explicitly address the need for a change of circumstances requirement, the weight of authority favors the view that even though a bona fide change in circumstances may be a sure sign that transfer of venue would be in the interests of justice, it does not augment or displace that essential inquiry.").

As discussed above, the interests of justice strongly favor transfer here. Plaintiff seeks to represent a nationwide FLSA collective of similarly situated appraisers, and Plaintiff would

suffer severe prejudice if Defendant's personal jurisdiction arguments prevented that pursuit. Accordingly, Plaintiff submits that he need not show any changed circumstances to support this motion—the interests of justice warrant transfer.

But even if the Court requires such a showing, changed circumstances are present here. Plaintiff filed this action intending to include appraisers who worked in all states. (Kimble Dec. ¶ 2.) There is no Second Circuit authority regarding application of *Bristol-Myers Squibb* to FLSA collective actions, and Plaintiff was well within his rights to file a putative nationwide collective in this Court. Defendant's claim that the Court lacks personal jurisdiction over the nationwide collective, and the Court's granting of that motion, presents a changed circumstance that warrants transfer to a district that does have personal jurisdiction. Plaintiff's request for this transfer is not forum-shopping in search of a more favorable judiciary, nor does it reflect a desire to escape an adverse ruling. Instead, Plaintiff seeks a transfer so that he may comply with the Court's ruling and proceed with his case in a jurisdiction where the alleged claims properly lie. *See*, *e.g.*, *In re Gerber Prod. Co. Baby Food Litig.*, No. 21-1977 (CCC), 2021 WL 4148107, at *2 (D.N.J. Sept. 13, 2021) (granting plaintiff's motion to transfer venue when plaintiff mistakenly filed in a forum where there was no general personal jurisdiction over the defendant).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court transfer this action to the Northern District of Illinois.

Respectfully submitted,

MENKEN SIMPSON & ROZGER LLP

*s/ Bruce E. Menken*

By:   Bruce E. Menken

80 Pine Street, 33rd Floor

New York, NY 10005

Tel. (212) 509-1616

Fax (212) 509-8088

bmenken@nyemployeelaw.com

BRYAN SCHWARTZ LAW, P.C.

*s/Bryan Schwartz*

By:   Bryan Schwartz (Admitted Pro Hac Vice)

180 Grand Avenue, Suite 1380

Oakland, CA 94612

ATTORNEYS FOR PLAINTIFF AND PROPOSED CLASS