# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

**Scott Kimble**, *individually and on behalf of others similarly situated*,

                    Plaintiff,

          v.

**Opteon Appraisal, Inc.,**

                    Defendant.

**DECISION and ORDER**

23-cv-6399-FPG-MJP

---

## APPEARANCES

**For Plaintiff:**

**Bruce E. Menken, Esq.**
**Jason J. Rozger, Esq.**
Menken, Simspon
& Rozger LLP
80 Pine St, 33rd Flr
New York, NY 10005

**Bryan J. Schwartz, Esq.**
Bryan Schwartz Law
1330 Broadway, Ste 1630
Oakland, CA 94612

**For Defendant:**

**William J. Anthony, Esq.**
Littler Mendelson, P.C.
900 Third Ave, 8th Flr
New York, NY 10022

## INTRODUCTION

**Pedersen, M.J.** This case returns to the Court in an unusual procedural posture. Plaintiff Scott Kimble moves to transfer venue to

1

the Northern District of Illinois, where Defendant Opteon's principal place of business is located. Opteon opposes.

Despite being offered the chance to litigate in its backyard, Defendant Opteon Appraisal asks that this case stay in the Western District of New York. Yet Opteon cannot dispute that its principal place of business is where Plaintiff Scott Kimble would like this case to be—the Northern District of Illinois. (Answer ¶ 5, ECF No. 6, Sept. 29, 2023 (admitting that Opteon has "its principal place of business in Rosemont, Illinois).) Nor can Opteon dispute that it is rolling out a new employment agreement requiring employees to "consent to the exclusive jurisdiction of the state and federal courts located in Cook County, Illinois[.]"[1] (Kimble Decl. in Supp. of Mot. for Corrective Relief and Equitable Tolling Ex. B at 2,[2] (the "Employment Agreement"), ECF No. 21-2, Dec. 13, 2023.)

---

[1] Kimble "does not concede the employment agreement and related documents are enforceable[,]" only that Opteon's "own documents" state that Opteon "selected Illinois as its preferred forum." (Mem. of Law in Supp. of Mot. to Transfer at 2 n.1, ECF No. 31-1, Feb. 7, 2024.)

[2] The Bluebook calls for using the page numbers assigned by the author of a document used as an exhibit in litigation: "Documents filed on PACER are imprinted with an ECF header. If these page numbers are different from the page numbers of the filed document, use the page numbers of the original document." *The Bluebook: A Uniform System of Citation*, B.17.1.4, at 26 (21st ed. 2020). For clarity, the Court notes that this quotation is from page 7 of ECF No. 21-2. The full provision reads:

You irrevocably consent to the exclusive jurisdiction of the state and federal courts located in Cook County, Illinois, for the

2

Even so, Opteon opposes Kimble's motion to transfer venue. Opteon's reason for doing so is apparent: Because this Court found that it lacks personal jurisdiction over any out-of-state plaintiffs seeking to join a collective action in this district, keeping this case in the Western District of New York will prevent Kimble from forming a fully-fledged FLSA collective action. This strongly indicates that "the interest of justice," to which the transfer statute speaks, favors Kimble. 28 U.S.C. § 1404(a). Because Kimble prevails on the other factors for transferring venue—owing in large part to Opteon's concessions about its principal place of business and preferred forum—and because Kimble clears other procedural hurdles, the Court **GRANTS** Kimble's motion, directing that this case be transferred to the Northern District of Illinois after a brief stay.

## BACKGROUND

Plaintiff Scott Kimble sued Opteon in mid-July 2023 alleging a violation of the Fair Labor Standards Act (FLSA), codified in relevant part at 29 U.S.C. § 216(b), as well as, for New York employees, liquidated damages under the New York Labor Law. (Compl., ECF No. 1, July 14, 2023.) The Court's earlier decision and order, (ECF No. 26, Jan.

---

purposes of any action or proceeding relating to or arising out of this Employment Plan and/or your employment with the Company.

(Employment Agreement at 2–3 ¶ 13, ECF No. 21-2.)

19, 2024), provides the backdrop of this case and an overview of the complaint.[3] The Court thus turns to what has happened since then.

After the Court ruled on Kimble's ability to maintain a collective action that would include out-of-state FLSA plaintiffs, the Court gave Kimble the opportunity to move to change venue. (ECF No. 26, Feb. 2, 2024.) The Court stated: "Kimble has the option to try to move this case to an appropriate forum under 28 U.S.C. § 1404(a)," the venue transfer statute. (*Id.* at 20.) The Court carefully noted that it did not "make" any "comment on the merits of such a motion." (*Id.*)

So, Kimble moved to change venue to the Northern District of Illinois. (ECF No. 28, Feb. 2, 2024.) After all, Opteon readily admitted that its principal place of business is in that district. (Answer ¶ 5, ECF No. 6.)

But Kimble had jumped the gun. The Court's order directed the parties to meet and confer and "propose a briefing schedule for any motions they believe are appropriate" within 14 days of the decision and order. (D&O at 28, ECF No. 26.) Kimble did not propose a briefing schedule.

_____

[3] In that Decision and Order, the question addressed was whether "out-of-state plaintiffs who did not work for Opteon in New York and did not reside in New York during the relevant time [could] join Kimble's FLSA collective action." *Kimble v. Opteon Appraisal, Inc.*, ___ F. Supp. 3d ____, No. 23-CV-6399-FPG-MJP, 2024 WL 208000, at *1 (W.D.N.Y. Jan. 19, 2024). This Court held they could not because the out-of-state plaintiffs lacked a sufficient connection to this forum.

The Court accordingly denied the motion to change venue with leave to renew. (Text Order, ECF No. 30, Feb. 5, 2024.) Kimble moved again to change venue shortly after that, again to the Northern District of Illinois. (ECF No. 31, Feb. 7, 2024.) Kimble submitted a declaration in support of the motion. ("Kimble Decl.," ECF No. 31-2.) Likewise, Kimble's attorney filed a declaration. ("Menken Decl.," ECF No. 31-3.)

Opteon opposed, simultaneously cross-moving to strike the lone consent[4] to become a party plaintiff filed in this case. (ECF No. 32, Feb. 28, 2024.) The combined opposition and cross-motion include an attorney declaration. ("Anthony Decl.," ECF No. 32-2.) It also includes Opteon's General Counsel's declaration. ("Clark Decl.," ECF No. 32-3.)

The parties fully briefed the pending motions by mid-March with further replies from Kimble and Opteon. (Kimble Reply, ECF No. 33, Mar. 13, 2024; Opteon Reply, ECF No. 34, Mar. 20, 2024.)

## MAGISTRATE JUDGE JURISDICTION

District Courts in this Circuit are divided on whether a motion to transfer venue is "dispositive." *See D'Amato v. ECHL, Inc.*, No. 13CV646S, 2015 WL 2151825, at *1 (W.D.N.Y. May 7, 2015) (collecting cases); *see also id.* at *2 ("This very Court has found in separate cases the motion to change venue was dispositive … and not dispositive."

---

[4] The consent is located at ECF No. 15 and was filed on Nov. 8, 2023. Given the Court's decision to grant Kimble's motion, the Court denies Opteon's motion to strike without prejudice.

(internal citations omitted)). Relevant here, 28 U.S.C. § 636(b)(1)(A) delineates some dispositive motions. This list does not include motions to transfer venue. But Section 636(b)(1)(A) does not provide an exhaustive list. *Williams v. Beemiller, Inc.*, 527 F.3d 259, 265 (2d Cir. 2008).

Where a party could question the magistrate judge's jurisdiction, the Court should analyze "the practical effect of the challenged action on the instant litigation." *See id.* (citation omitted). For example, courts consider remand orders dispositive because they "determine the fundamental question of whether a case [can] proceed in a federal court." *Id.* (alteration added). But here, the Court determines nothing fundamental. Unlike an order remanding an action to state court, a motion to transfer venue does not divest the federal judiciary of jurisdiction; it "merely moves the action from one district to another[.]" *D'Amato*, 2015 WL 2151825, at *3.

Because granting or denying a motion to transfer venue does not divest the federal judiciary of jurisdiction, this Court will follow the majority view within the Second Circuit, determining that this motion is non-dispositive. *See Fritz v. Realpage, Inc.*, No. 20-CV-7055-CJS-MJP, 2021 WL 3700434, at *1 (W.D.N.Y. Aug. 20, 2021) (collecting cases) ("Most recent district court opinions in the Second Circuit conclude that motions for a change of venue are non-dispositive and therefore 'within the pretrial reference authority of magistrate judges.'" (quoting *Skolnick*

6

*v. Wainer*, No. CV 2013-4694, 2013 WL 5329112, at *1 n.1 (E.D.N.Y. Sept. 20, 2013))); *accord Mulgrew v. U.S. Dep't of Transportation*, ___ F. Supp. 3d ____, ____ n.1, 2024 WL 665948, at *1 n.1 (E.D.N.Y. Feb. 17, 2024) (collecting cases).

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Winner v. Tryko Partners, LLC*, 333 F. Supp. 3d 250, 266 (W.D.N.Y. 2018) (quoting 28 U.S.C. § 1404(a)); *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (same). "Congress enacted § 1404(a) to permit change of venue between federal courts." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981). "Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice. ... To this end, it empowers a district court to transfer any 'civil action' to another district court if the transfer is warranted by the convenience of parties and witnesses and promotes the interest of justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

Courts have "broad discretion in making determinations of convenience." *D. H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006); *see also In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) ("[M]otions for transfer lie within the broad discretion of the

district court and are determined upon notions of convenience and fairness on a case-by-case basis." (citation omitted)). But "[t]he party requesting the transfer bears the burden of establishing that transfer is warranted by clear and convincing evidence." *Kumaran v. Nat'l Futures Ass'n*, No. 1:20-CV-03668 (GHW) (SDA), 2023 WL 6890839, at *3 (S.D.N.Y. Oct. 19, 2023) (subsequent history omitted) (citing *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 113–14).

Courts engage in a two-step inquiry when analyzing a motion to transfer venue. *First*, the court determines whether the plaintiff could have brought the case in the transferee court. *See Wald v. Bank of Am. Corp.*, 856 F. Supp. 2d 545, 548–49 (E.D.N.Y. 2012) (noting that the moving "party must demonstrate that the transferee court is able to exercise jurisdiction over the parties and must be an appropriate venue of the action and that the balance of convenience and justice favors transfer" (cleaned up and quotation omitted)).

*Second*, the court determines "whether considering the convenience of parties and witnesses, and the interest of justice, a transfer is appropriate." *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 374 (W.D.N.Y. 2018) (internal quotation marks omitted) (quoting *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006)). This reflects the relevant statutory language of Section 1404(a).

To accomplish the second step, courts look to the "convenience factors." *See D.H. Blair & Co.*, 462 F.3d at 106–07 (listing "[s]ome of the factors a district court is to consider"). Although certain factors weigh more heavily, no one factor is dispositive. *See Wald*, 856 F. Supp. 2d at 549 ("There is no strict formula for the application of these factors, and no single factor is determinative." (quoting *Delta Air Lines v. Ass'n of Flight Attendants*, 720 F. Supp. 2d 213, 217 (E.D.N.Y. 2010))).

As noted, the party moving for transfer "carries the 'burden of making out a strong case for transfer.'" *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 114 (quoting *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)). The moving party must make the case for transfer via several factors, including:

> (1) the plaintiff's choice of forum,
>
> (2) the convenience of the witnesses,
>
> (3) the location of relevant documents and relative ease of access to sources of proof,
>
> (4) the convenience of parties,
>
> (5) the locus of operative facts,
>
> (6) the availability of process to compel the attendance of unwilling witnesses, and
>
> (7) the relative means of the parties.

*Fritz*, 2021 WL 3700434, at *2 (reformatted as a list) (quoting *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 112); *see also Winner*, 333 F. Supp. 3d at 266 (noting several additional factors including first, "the forum's

familiarity with governing law," second, "the weight accorded to [p]laintiff's choice of forum," and "trial efficiency and the interests of justice, based on the totality of the circumstances" (quoting *Fuji Photo*, 415 F. Supp. 2d at 373)). After considering threshold questions, the Court turns to the convenience factors.

## ANALYSIS

### I.   Kimble did not ignore a clear jurisdictional bar.

The Second Circuit has held that courts should not "reward plaintiffs for their lack of diligence in choosing a proper forum" with a later transfer of venue. *Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394 (2d Cir. 1992). If Kimble ignored a clear jurisdictional bar, this Court should deny his motion. *See Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 407–08 (S.D.N.Y. 2004) ("If a plaintiff has ignored a clear jurisdictional bar in filing suit in a particular forum, dismissal rather than transfer is often warranted, especially if the plaintiff is engaging in forum shopping or some other form of gamesmanship." (additional citations omitted) (citing *Spar*, 956 F.2d at 394–95)). But not every jurisdictional mistake will doom a later motion to transfer. *See id.* (finding that the plaintiff did not ignore a clear jurisdictional bar where their personal jurisdictional arguments were not "incredible").

Absent such a clear jurisdictional bar, however, the Second Circuit expects courts to transfer cases to a district where the plaintiff could have brought the case under 28 U.S.C. § 1406(a). *See Daniel v. Am. Bd.*

*of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005) ("Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." (citing *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999))). The question before the Court is whether Kimble knew, or should have known, that personal jurisdiction was lacking.

Here, both parties conceded that the Second Circuit has not weighed in on whether *Bristol-Myers Squibb* applies to FLSA collective actions. So, when the time was right, the Court ruled on that question. *See generally Kimble*, 2024 WL 208000. Kimble thus did not ignore a *clear* jurisdictional bar; he is responding to this Court's unfavorable ruling on a disputed question of law. *Cf. e.g., Wohlbach v. Ziady*, No. 17 CIV. 5790 (ER), 2018 WL 3611928, at *5 (S.D.N.Y. July 27, 2018) ("Wohlbach was well aware that all the relevant events occurred in Delaware, and that Shirley and the University both resided in Delaware … Despite that, she chose to file the Complaint in this District without providing any colorable basis for venue here. Wohlbach's decision to file her case in this District is not a result of 'an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn,' but of her lack of diligence in meeting the clear jurisdictional bar of 28 U.S.C. § 1391." (quoting *Spar*, 956 F.2d at 394)). *Feldman v. L & M Mowing. Inc.*, No. 98 CV 4246SJ, 1999 WL 284983, at *3 (E.D.N.Y. May 3, 1999) ("[D]ismissal may be warranted

where the plaintiff knowingly chooses the wrong forum or otherwise exhibits a lack of diligence." (citations omitted)). Put another way, while the Court found there is a jurisdictional bar, it was hardly an obvious one.

Yet Opteon argues that Kimble should have known about the jurisdictional bar (1) before suing, (2) when Opteon answered, (3) when the parties prepared their joint proposed discovery plan under Fed. R. Civ. P. 26(f), and (4) during motion practice. But all this shows is that Kimble knew that Opteon would oppose Kimble's efforts at collective action certification. This was not disregard for a clear jurisdictional bar. Kimble tested a district in a circuit without controlling authority, losing on a question that has divided courts, including courts in this Circuit.

As such, Kimble's case is a far cry from those Opteon cites. *First*, this Court sees no evidence that Kimble has engaged in forum shopping. Courts will decline to transfer venue if it appears that a plaintiff wants to "bargain hunt," i.e., forum shop, "after commencing an action." *Krisko v. Marvel Ent., LLC*, 473 F. Supp. 3d 288, 301 (S.D.N.Y. 2020) (quoting *Spar*, 956 F.2d at 394–95). The Second Circuit explained its disapproval of such bargain hunting:

> Certainly, "a plaintiff already has the option of shopping for a forum with the most favorable law," … before it makes a decision to initiate an action in a particular district. Once a plaintiff has commenced its action, however, its opportunity to search for a more conducive forum ordinarily is concluded.

*Spar*, 956 F.2d at 395 (internal citation omitted) (quoting *Ferens v. John Deere Co.*, 494 U.S. 516, 527 (1990)). The Court finds, on the record before it, that "there is no evidence that" Kimble chose the Northern District of Illinois "to gain some improper advantage." *Flood v. Carlson Restaurants, Inc.*, 94 F. Supp. 3d 572, 576–77 (S.D.N.Y. 2015). Only upon this Court's invitation did Kimble move for transfer. And this only after the Court ruled on a contested—not obvious—question of law. Finally, the Court notes that Kimble is trying to transfer this case to a district with general jurisdiction over Opteon, not a district that may reconsider this Court's decision about *Bristol-Myers*. The reason Kimble moves to transfer venue is not to find a more favorable forum for his FLSA collective action: It is to bring that collective action in the first place.

*Second*, and relatedly, cases like *Spar* involve *obvious* jurisdictional bars. Again, this case involves no jurisdictional bar that Kimble should have known about from the outset. *Spar*, 956 F.2d at 394 (explaining that "a statute of limitations is far from an elusive fact unknown to a reasonable plaintiff"). In *Spar*, the Court found dispositive the plaintiff's failure to "pursue its claim diligently and [ ] research New York's statute of limitations." *Id.* at 393. Thus, the court declined to transfer the case. *Id.* at 395. Unlike *Spar*, where research would have yielded a black-letter result, Kimble could (and did) point to trial courts in this Circuit that disagree with this Court's ruling. *See, e.g., Meo v.*

*Lane Bryant, Inc.*, No. CV186360JMAAKT, 2019 WL 5157024, at *12 (E.D.N.Y. Sept. 30, 2019) ("Congress intended for nationwide FLSA collective actions. Applying *Bristol-Myers* to FLSA collective actions would countermand that purpose."); *Mason v. Lumber Liquidators, Inc.*, No. 17CV4780MKBRLM, 2019 WL 3940846, at *7 (E.D.N.Y. Aug. 19, 2019). Kimble did not ignore a clear jurisdictional bar.

## II.   Kimble need not show a change in circumstances.

Some courts in this Circuit require a plaintiff moving to transfer venue to show "a new development that 'warrants transferring the action.'" *United States ex rel. Fisher v. Bank of Am., N.A.*, 204 F. Supp. 3d 618, 623 (S.D.N.Y. 2016) (quoting *Ferrostaal, Inc. v. Union Pac. R. Co.*, 109 F. Supp. 2d 146, 151 (S.D.N.Y. 2000)). "This change must have 'taken place since the filing of [the] suit.'" *Id.* (alteration in original) (quoting *Harem-Christensen Corp. v. M. S. Frigo Harmony*, 477 F. Supp. 694, 698 (S.D.N.Y. 1979)). "Circumstances that were known or should have been known to plaintiff long before the lawsuit accordingly will not support a plaintiff's motion to transfer." *Id.* (internal quotation marks and quotation omitted). But this is a creation of Second Circuit trial courts; it is not controlling precedent.

Thus, because the Second Circuit has not weighed in on this question, the Court may (and does) decline to require Kimble to show a development warranting transfer. *See Nat'l Experiential, LLC v. Nike, Inc.*, No. 120CV3197ENVSIL, 2021 WL 9678642, at *4 (E.D.N.Y. July

31, 2021) ("With the Second Circuit yet to explicitly address the need for a change of circumstances requirement, the weight of authority favors the view that even though a bona fide change in circumstances may be a sure sign that transfer of venue would be in the interests of justice, it does not augment or displace that essential inquiry." (collecting cases)). The "essential inquiry" under 28 U.S.C. § 1404(a) already accounts for gamesmanship and inequity by requiring the Court to examine "the interest of justice" and "the convenience of parties and witnesses," 28 U.S.C. § 1404(a), rendering the change-of-circumstances analysis as superfluous as it is divorced from the text of the statute. Accordingly, the Court finds that "the interests of justice inquiry adequately subsumes consideration of any change in circumstances." *Hobby Lobby Stores Inc. v. Obbink*, No. 21CV3113RPKMMH, 2023 WL 6214240, at *4 (E.D.N.Y. Sept. 23, 2023) (citing *Nat'l Experiential, LLC*, 2021 WL 9678642, at *4).

## III. The convenience factors favor transfer.

Because neither party requested an evidentiary hearing on the jurisdictional facts alleged, the Court proceeds to resolve this motion on the papers and declarations the parties submitted. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) (per curiam) (finding that the district court did not err "in failing to hold an evidentiary hearing, as there [was] no indication that either party requested one" (alteration added)). Moreover, since the parties do not seriously

dispute whether Kimble could have brought this case in Illinois,[5] the Court accordingly turns to the convenience factors. As stated, Kimble "carries the 'burden of making out a strong case for transfer.'" *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 114 (quoting *Filmline (Cross-Country) Prods., Inc.*, 865 F.2d at 521).

### A.   Factors about the parties favor transfer.

The private interest factors—that is, those about the parties—favor transfer. Indeed, based on the private interest factors alone, the Court could order transfer.

[Remainder of page intentionally blank.]

---

[5] Here, Kimble could have brought this case in any "judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Since Opteon is the only defendant, venue is proper where Opteon resides.

A corporation, like Opteon, "shall be deemed to reside … in any judicial district in which such defendant is subject to the court's personal jurisdiction." 28 U.S.C. § 1391(c)(2). Kimble may thus sue Opteon in the Northern District of Illinois because Opteon maintains its principal place of business there. (Answer ¶ 5, ECF No. 6.) A corporation is at home, for purposes of general personal jurisdiction, where it maintains its principal place of business. *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 498 (2d Cir. 2020).

Additionally, theCourt takes judicial notice that Rosemont, Illinois, is found within Cook County, Illinois, which is found in the Northern District of Illinois. *See About the U.S. Attorney's Office*, United States Attorney for the Northern District of Illinois, https://www.justice.gov/usao-ndil/about (listing counties within the district's eastern and western divisions). The Court also notes that it appears some of the parties' submissions misspell "Rosemont" as "Rosemount." Based on context, this was an unintentional error.

16

1.   *Opteon's forum-selection clause is not con-*
     *trolling, but it provides strong evidence*
     *about the convenience of the Northern Dis-*
     *trict of Illinois for Opteon.*

A valid forum-selection clause will usually decide where a case

ends up. Courts will usually transfer venue to the contractually desig-

nated forum. The party resisting transfer in the face of "a valid forum-

selection clause" bears a heavy burden of showing "extraordinary cir-

cumstances unrelated to the convenience of the parties." *Atl. Marine*

*Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 (2013).

"When parties agree to a forum-selection clause, they waive the right to

challenge the preselected forum as inconvenient or less convenient for

themselves or their witnesses, or for their pursuit of the litigation." *Id.*

at 64.

Here, Opteon now requires its employees to sign an employment

agreement in which they "consent to the exclusive jurisdiction of the

state and federal courts located in Cook County, Illinois, for the purposes

of any action or proceeding relating to or arising out of this Employment

Plan and/or your employment with the Company." (Employment Agree-

ment at 2–3 ¶ 13, ECF No. 21-2.) This agreement does not appear to

apply to Kimble, and in any event, Kimble argues it is not enforceable.

(Mem. of Law in Supp. of Mot. to Transfer at 2, ECF No. 31-1; *see also*

*id.* at 6 n.4 (noting that Kimble "did not sign the version of the employ-

ment agreement containing the venue provision" and does not believe

the arbitration clause is enforceable.) Admittedly, this tempers Kimble's argument. The Court cannot apply this Circuit's law about forum-selection clauses as it normally would.

But the Court agrees with Kimble's essential point: "The convenience of an Illinois venue for [Opteon] is apparent from Opteon's decision to include a venue provision in its new employment agreements." (*Id*. at 6 (alteration added).) Opteon's incentive is apparent. Opteon would not put a forum-selection provision in *every* employment agreement for all disputes arising out of that agreement unless Illinois was the best of all available forums. A forum-selection clause that overlaps with a company's principal place of business is strong evidence that the Northern District of Illinois is a convenient forum for Opteon. *See Travelers Prop. Cas. Co. of Am.*, 324 F. Supp. 3d at 376 ("When analyzing the convenience of the parties, courts often look to the parties' principal places of business and the location of their offices." (quoting *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 618 (S.D.N.Y. 2016))). Thus, the convenience of the parties factor wholeheartedly favors Kimble since he is willing to travel to the Northern District of Illinois. (Kimble Decl. ¶ 3, ECF No. 31-2 ("I am prepared to travel to Illinois as needed to litigate the claims in this case if the case is transferred to Illinois.").)

Opteon advances the argument that this venue change does not serve Kimble well, meaning that the convenience of the parties factor

does not favor him. Opteon adds that Kimble's proposed change of venue is "not for his own benefit … or the purported witnesses' convenience, but [ ] solely for the potential benefit of individuals who are not parties to this lawsuit nor represented by [Kimble's] counsel, and over whom this Court does not have personal jurisdiction[.]" (Cross-Mot. Mem. of Law at 8–9, ECF No. 32-1 (alterations added and emphasis removed).) Elsewhere, Opteon asserts that the potential benefit to which it alludes is also for Kimble's counsel. (*Id*. at 11.) Despite heavy emphasis, Opteon cites little, if any, case law in support of this argument.

This may be because Opteon's argument misses the point: Kimble wants to bring a collective action. He has from the start. The Court determines that it will not weigh inconvenience for Kimble as heavily since Kimble's "desire" was, and is, for this "case [to] include appraisers who worked for Opteon throughout the country" and he thus seeks "to transfer th[is] case to Illinois." (Kimble Decl. ¶ 2, ECF No. 31-2.) After all, Kimble's desire is exactly what the FLSA affords him: The chance to bring "one proceeding of common issues of law and fact." *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170 (1989). And so, this Court will not punish Kimble for a fair—though ultimately incorrect—gamble about his ability to bring a collective action in this district. *See Iragorri v. United Techs. Corp.,* 274 F.3d 65, 73 (2d Cir. 2001) (noting that "the

plaintiff's convenience" is a "legitimate reason[]" for choosing a particular forum).

Opteon's argument likewise blinks the plain text of the venue transfer statute. Under 28 U.S.C. § 1404(a), the Court can (and will) consider non-parties' interests. The plain language of Section 1404(a) tells the Court to consider parties, witnesses, and the interest of justice. If Congress meant for the Court to consider only parties, excluding non-parties, the text of Section 1404(a) is a poor execution of that intent.

2.   *The convenience of witnesses factor favors transfer.*

"Convenience of the witnesses is perhaps the most important consideration in determining whether transfer is appropriate." *Travelers Prop. Cas. Co. of Am.*, 324 F. Supp. 3d at 375 (quoting *Adirondack Transit Lines, Inc. v. Greyhound Lines, Inc.*, No. 1:15-CV-01227 (LEK)(CFH), 2016 WL 5415772, at *5 (N.D.N.Y. Sept. 28, 2016)). "[T]he weight given to the convenience of witnesses depends upon whether the party seeking transfer has described the witnesses' testimony so the court can qualitatively evaluate its materiality." *Excellent Home Care Servs., LLC v. FGA*, Inc., No. 13 CIV. 05390 ILG, 2014 WL 652357, at *3 (E.D.N.Y. Feb. 19, 2014). Accordingly, the moving party "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Factors Etc., Inc v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *abrogated on other grounds by*

*Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990).[6] "The conven-ience of non-party witnesses generally carries more weight than the con-venience of party witnesses." *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004).

Because Opteon employs a primarily remote workforce, this fac-tor is more difficult to assess. (Cross-Mot. Mem. of Law at 6, ECF No. 32-1, Feb. 28, 2024 ("While Opteon's principal place of business may be in Rosemo[]nt Illinois, it has a largely remote workforce." (citing Compl. ¶ 6, ECF No. 1)); *id.* at 11 ("Plaintiff also acknowledges that Opteon's workforce is primarily remote and that not all Opteon's operations are centralized in Illinois."); Kimble Decl. ¶ 10, ECF No. 31-2; *see also* Clark Decl. ¶¶ 3–5, ECF No. 32-3.) About the transfer, Opteon argues, "[i]t is in *no way* more convenient for Opteon and its witnesses to litigate this matter in Illinois as opposed to New York." (Cross-Mot. Mem. of Law at 11, ECF No. 32-1.) Opteon repeats this refrain later, italics and all.

Setting aside the unnecessary italics, Opteon's assertion is ques-tionable. First, Opteon admits its principal place of business is in the Northern District of Illinois. One of Opteon's corporate officers has signed declarations for this case in that district. Second, Opteon's new employment agreement mandates an Illinois forum. (Employment Agreement at 2–3 ¶ 13, ECF No. 21-2 (noting that Cook County is

---

[6] *See infra* note 8.

Opteon's chosen forum).) Third, Kimble states that he "virtually attended meetings that were hosted in [Opteon's] Chicago office very frequently." (Kimble Decl. ¶ 5, ECF No. 31-2.) On this record, it is hard to believe that Illinois is "in *no way*" more convenient for Opteon and its witnesses.

Moreover, as Kimble correctly points out, witnesses who do not reside in Illinois could be deposed remotely. *See Goldowsky v. Exeter Fin. Corp.*, No. 15-CV-632A(F), 2021 WL 695063, at *4 (W.D.N.Y. Feb. 23, 2021) ("Further, with the availability of video-conferencing technology, it is unlikely that Plaintiffs will be required to travel to Dallas for depositions."). Indeed, if Opteon employs a predominantly remote workforce, videoconferencing should be familiar to witnesses in this case. Of note, the rise of remote videoconferencing may soon undercut the usefulness of this factor in the transfer analysis.

Finally, the locations of potential witnesses do not sway the Court. Kimble unambiguously states that he will travel to the Northern District of Illinois for this case. (Kimble Decl. ¶¶ 2–3, ECF No. 31-2.) And Opteon admits that one employee-witness resides in Illinois. (Clark Decl. ¶ 6, ECF No. 32-3 (indicating additionally that Opteon's General Counsel signed this declaration in "Rosemont, Illinois").) For these reasons, this factor favors transfer.

3.    *The locus of operative facts is neutral.*

"The locus of operative facts is a 'primary factor' in determining whether to transfer venue." *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 485 (S.D.N.Y. 2007) (quotation omitted), *aff'd sub nom N.Y. Marine & Gen. Ins. Co.*, 599 F.3d 102; *see also Tianhai Lace USC Inc. v. Forever 21, Inc.*, No. 16-CV-5950 (AJN), 2017 WL 4712632, at *4 (S.D.N.Y. Sept. 27, 2017) (same) (quoting *Steck v. Santander Consumer USA Holdings Inc.*, No. 14-CV-6942 (JPO), 2015 WL 3767445, at *6 (S.D.N.Y. June 17, 2015)). "To determine where the locus of operative facts lies, courts look to the site of events from which the claim arises." *Travelers Prop. Cas. Co. of Am.*, 324 F. Supp. 3d at 379 (internal quotation marks omitted) (quoting *Age Grp. Ltd. v. Regal Logistics, Corp.*, No. 06 Civ. 4328 (PKL), 2007 WL 2274024, at *3 (S.D.N.Y. Aug. 8, 2007)).

Often, the locus of operative facts is where an employee performs his or her work or where that employee signs his or her contract. *See, e.g., Hicks v. T.L. Cannon Corp.*, No. 12-CV-6517T, 2013 WL 2423782, at *5 (W.D.N.Y. Jun. 4, 2013) ("[T]here is no single locus of operative facts in this action. Plaintiffs purport to represent hundreds of tipped employees who worked in different restaurant[s] throughout the state." (alterations added)). Here, the Court finds that "there is no single locus of operative facts" because "[t]he proof of the claims will focus on events in" Illinois and every district in which appraisers are located. *Hart v.*

*Crab Addison, Inc.*, No. 13-CV-6458 CJS, 2014 WL 2865899, at *5 (W.D.N.Y. June 24, 2014). Thus, this factor is neutral.

Yet Kimble argues that this should not be true of FLSA actions. Certainly, "[i]n a nationwide FLSA action [ ] it is often difficult to fix a single locus of operative facts[.]" *Flood*, 94 F. Supp. 3d at 578 (alterations added). But "courts have concluded that operative facts may be found at the locations where employees worked, notwithstanding allegations that a uniform corporate policy caused the FLSA violations." *Id.*; *see also Pauli v. Ollie's Bargain Outlet, Inc.*, No. 5:22-CV-00279 (MAD/ML), 2022 WL 14760084, at *5 (N.D.N.Y. Oct. 25, 2022) ("In putative class action 'employment disputes,' 'the locus of operative facts is the location of the alleged violations … not the corporate headquarters.'" (quoting *Bukhari v. Deloitte & Touche LLP*, No. 12 CIV. 4290 PAE, 2012 WL 5904815, at *5 (S.D.N.Y. Nov. 26, 2012))). Thus, in this case, "the locus of operative facts is split amongst several forums[.]" *Travelers Prop. Cas. Co. of Am.*, 324 F. Supp. 3d at 381.

Although Opteon's policies allegedly violating the FLSA may have emerged from its principal place of business in the Northern District of Illinois, other facts center on each employee, such as whether or how much overtime he or she had to work, and the location from which he or she submitted appraisal reports. The Court is unpersuaded; this factor is neutral.

4.    *Kimble's choice of forum is neutral.*

"A plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *Travelers Prop. Cas. Co. of Am.*, 324 F. Supp. 3d at 384 (quoting *Royal & Sunalliance v. Brit. Airways*, 167 F. Supp. 2d 573, 576 (S.D.N.Y. 2001); *see also Iragorri*, 274 F.3d at 71. "[T]he plaintiff's choice is generally accorded more deference where there is a material connection or significant contact between the forum state and the underlying events allegedly underlying the claim, or where the plaintiff is a resident of the forum district." *Travelers Prop. Cas. Co. of Am.*, 324 F. Supp. 3d at 384 (quoting *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998)). Thus, deference to a plaintiff's choice of forum "varies with the circumstances." *Iragorri*, 274 F.3d at 71.

This case presents one of the circumstances in which courts afford a plaintiff's choice of forum less deference. As discussed above in analyzing the convenience of the parties factor, Kimble moves to transfer—not Opteon. *See Ferrostal, Inc.*, 109 F. Supp. 2d at 151 ("A plaintiff moving to transfer venue has already had an opportunity to choose the venue when filing the action."). The Court finds that the customary deference afforded to the plaintiff's choice of forum is not warranted here.[7]

_____

[7] If this case presented signs of forum shopping, the Court may have to find that this factor favors keeping this case in the Western District of New

5.    *The factor concerning the location of documents and access to sources of proof slightly favors transfer.*

"In today's era of photocopying, fax machines and Federal Express," each party's documents can easily make their way to another venue. *Coker v. Bank of Am.*, 984 F. Supp. 757, 766 (S.D.N.Y. 1997); *DataCatalyst, LLC v. Infoverity, LLC*, No. 20 CIV. 310 (AKH), 2020 WL 1272199, at *4 (S.D.N.Y. Mar. 17, 2020) ("The location of relevant documents is not a major consideration in an era of electronic records and eDiscovery." (citing *Am. Steamship Owners*, 474 F. Supp. 2d at 484)).

Here, the Court finds that this factor slightly favors transfer. To the extent that evidence is available in one place, that place is likely to be Opteon's principal place of business. And Opteon, as the defendant-

---

York. *See Hershman v. UnumProvident Corp.*, 658 F. Supp. 2d 598, 601 (S.D.N.Y. 2009) ("The more [ ] a decision" to change venue "is dictated by reasons that the law recognizes as valid, the greater the deference that will be given to it" but "the more it appears the decision is 'motivated by forum shopping reasons,' the less deference will be accorded to it." (cleaned up) (citing *Iragorri*, 274 F.3d at 73)). As discussed, however, it does not.

Moreover, for class actions, courts afford less deference because "members of the class are dispersed throughout the nation." *Wald*, 856 F. Supp. 2d at 549 (quotation omitted). But "the opt-in structure of FLSA collective actions strongly suggests that Congress intended to give plaintiffs considerable control over the bringing of a FLSA" collective action. *Flood*, 94 F. Supp. 3d at 577 (cleaned up) (quoting *Koslofsky v. Santaturs, Inc.*, No. 10 CIV. 9160 BSJ, 2011 WL 10894856, at *2 (S.D.N.Y. Aug. 18, 2011)). "[U]nlike class actions under Federal Rule of Civil Procedure 23, members of a § 216(b) collective action are not bound by the court's decision unless they 'opt-in.'" *Koslofsky*, 2011 WL 10894856, at *2 (citing *Wood v. N.Y. Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982)). "Thus, a plaintiff's choice of forum in a FLSA collective action is entitled to more deference than the choice of forum in Rule 23 national class actions." *Id.* (cleaned up) (quoting *Koslofsky*, 2011 WL 10894856, at *2).

employer, is "likely to produce the bulk of the relevant evidence in this case." *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 24 (S.D.N.Y. 2012). The Court thus finds that: "This factor favors transfer, but not strongly." *Id.* (citation omitted).

      6.    *The relative means of the parties factor is neutral.*

"In analyzing whether the relative means of the parties favors transfer, a court should determine whether a party's 'financial situation would meaningfully impede its ability to litigate this case in either forum.'" *Travelers Prop. Cas. Co. of Am.*, 324 F. Supp. 3d at 383 (quotation omitted). This factor is "rarely [ ] a dispositive reason to grant or deny a transfer motion.'" *Id.* (alteration added) (quoting *Schoenefeld v. New York*, No. 08 Civ. 3269 (NRB), 2009 WL 1069159, at *3 (S.D.N.Y. Apr. 16, 2009)). So too here.

The relative means of the parties factor does not cover what Kimble thinks it does. Rather, as stated, it asks whether either party's "financial situation would 'meaningfully impede its ability to litigate this case in either forum.'" *Id.* (quoting *Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional*, No. 08 CIV. 8106 (PGG), 2009 WL 2252116, at *8 (S.D.N.Y. July 28, 2009)). Kimble tells the Court that he ready to litigate this case in the Northern District of Illinois.

Further, although some courts consider "the case of an individual suing a large corporation," Kimble has not provided any "evidence

showing that the costs associated with pursuing this action would increase markedly if transfer were granted." *Flood*, 94 F. Supp. 3d at 580 (quotation omitted); *Travelers Prop. Cas. Co. of Am.*, 324 F. Supp. 3d at 383 (finding that the relative means factor did not favor transfer where the party seeking transfer did "not provide[] any specific information as to its own assets" other than a general assertion (citation omitted)). The Court finds that this factor is neutral.

> 7. *The availability of compulsory process favors transfer.*

Under Fed. R. Civ. P. 45(c)(1)(A), a district court generally cannot issue a subpoena that would compel a non-party witness to travel more than 100 miles or out of state. *See Travelers Prop. Cas. Co. of Am.*, 324 F. Supp. 3d at 382 ("Under Federal Rule of Civil Procedure 45, a district court can enforce a trial subpoena served on a witness within the state or within 100 miles of the court." (quoting *In re Anadarko Petroleum Corp.*, No. 10 CIV. 05894 (PGG), 2012 WL 12894796, at *8 (S.D.N.Y. Mar. 19, 2012))). But the witnesses known to the Court in this case are employees and thus are "under" Opteon's "control," making them "available to testify in" the Northern District of Illinois. *Id.* (quoting *Dentsply Int'l Inc. v. Dental Brands for Less LLC*, No. 15 CIV. 8775 (LGS), 2016 WL 868335, at *2 (S.D.N.Y. Mar. 4, 2016)); *see also Race Safe Sys., Inc. v. Indy Racing League*, 251 F. Supp. 2d 1106, 1111 (N.D.N.Y. 2003) (cleaned up) ("Employees of the parties will, as a practical matter, be

available in any venue by virtue of the employment relationship." (citation omitted)). This factor accordingly favors transfer.

### B. Factors about the public interest favor transfer.

On balance, the Court finds that the public interest factors favor transfer. The interest of justice factor, which favors transfer, outweighs the factor involving familiarity with the governing law.

#### 1. The interest of justice factor strongly favors transfer.

"The Court's consideration of whether transfer is in the interest of justice is based on the totality of the circumstances and relates primarily to issues of judicial economy." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 407 (S.D.N.Y. 2005) (internal citations and quotation marks omitted) (quoting *Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l Co.*, 245 F. Supp. 2d 523, 527 (S.D.N.Y. 2003)) "When a case is in its earliest stages, it is generally not inefficient to transfer the case." *Royal & Sun All. Ins., PLC v. Nippon Express USA, Inc.*, 202 F. Supp. 3d 399, 411 (S.D.N.Y. 2016). By contrast, the further a case is in the litigation process, the less efficient a transfer would be. *See id.* (finding that transfer would be inefficient when "the parties are only two months away from the close of discovery"). "There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both

parties and witnesses, and inconsistent results can be avoided." *Wald*, 856 F. Supp. 2d at 550 (quoting *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968)).

Here, the Court determines that the interests of justice and judicial economy firmly favor transfer. To begin, this case is still in the early stages of discovery.[8] Further, this case has "only minimal connections to New York," through Kimble, and would "delay adjudication of other cases brought by parties who are compelled to sue" in this district. *Travelers Prop. Cas. Co. of Am.*, 324 F. Supp. 3d at 385.

Preventing Kimble from pursuing his case as intended would punish Kimble too much for the gamble he took. Doing so would stymie "Congress's goal in granting employees the right to proceed as a collective," which "was to provide them 'the advantage of lower individual costs to vindicate rights by the pooling of resources.'" *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515–16 (2d Cir. 2020) (discussing similar language in the FLSA and Age Discrimination in Employment Act) (quoting *Hoffman-La Roche*, 493 U.S. at 170). And of great interest to

---

[8] It is for this reason that Kimble is unaware of the testimony that witnesses employed by Opteon would provide. Kimble thus need not specify how these witnesses would testify. In any event, because Kimble seeks transfer "on account of several factors, his failure to specify their testimony is not fatal." *Connors v. Lexington Ins. Co.*, 666 F. Supp. 434, 455 (E.D.N.Y. 1987) (quoting *Factors Etc., Inc.*, 579 F.2d at 218). And for the reasons stated, it is safe to assume that the Northern District of Illinois is convenient enough for Opteon and its witnesses. *See id.*

federal courts, denying Kimble's motion would impede "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged" FLSA violation. *Id.* (quoting *Hoffman-La Roche*, 493 U.S. at 170); *see also Wald*, 856 F. Supp. 2d at 550 (quoting *Wyndham Assocs.*, 398 F.2d at 619).

If the Court denies Kimble's motion, another appraiser could take up Kimble's mantle and claims under the FLSA. This employment agreement would then come into play, requiring that the employee bring his or her claims in "Cook County, Illinois." (Employment Agreement at 2–3 ¶ 13, ECF No. 21-2.) As Kimble correctly points out, this would mean two FLSA actions: one for Opteon's appraisers in New York, and one for all of Opteon's other appraisers. This does not serve the interests of justice and judicial economy. *See, e.g., Est. of Stanley Kauffmann v. Rochester Inst. of Tech.*, No. 16 CIV. 2509 (NRB), 2017 WL 449911, at *2 (S.D.N.Y. Jan. 19, 2017) ("Transfer under such circumstances substantially advances the interests of fairness, efficiency and judicial economy by preventing duplicative proceedings and thereby reducing the overall burden on the parties, non-party witnesses and the judicial system." (quoting *Posven*, 303 F. Supp. 2d at 406)). So, this factor heavily favors transfer.

>2.   *The forum's familiarity with the governing law*
>     *weighs slightly against transfer.*

"Familiarity with the governing law is generally given little weight in federal courts." *Flood*, 94 F. Supp. 3d at 580 (quoting *AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 531 (S.D.N.Y. 2004)). "This is particularly true when the governing law is a federal statute like the FLSA, which is equally familiar to all federal courts." *Id.* (citation omitted). But "courts in New York are more familiar with New York substantive law than are the courts in a non-New York transferee forum." *Id.* (cleaned up) (quoting *Don King Prods., Inc. v. Douglas*, 735 F. Supp. 522, 536 (S.D.N.Y. 1990)).

Where, as here, "there are state law claims, the forum's familiarity with governing law supports retention of the action." *Id.* (quoting *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006). Kimble brings two state law claims under the NYLL. (Compl. ¶¶ 81–88, ECF No. 1.) One claim mirrors Kimble's FLSA claim because it involves Opteon's alleged failure to pay overtime; the other involves Opteon allegedly "deducting an 'innovation fee' from [appraisers'] wages in violation of the NYLL." (*Id.* ¶¶ 85–88.) Because at least the innovation fee claim is not a "mere facsimile[]" of Kimble's federal claims, the Court concludes that this factor weighs slightly against transfer. *Flood*, 94 F. Supp. 3d at 580 (citation omitted). The Court finds, however, that this factor does not outweigh the other public interests

factors that the Court has analyzed. *See Posven*, 303 F. Supp. 2d at 405 ("A forum's familiarity with the governing law, however, is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." (citations omitted)). The Court is thus not swayed from its conclusion that transfer is warranted.

*   *   *

**CONCLUSION**

The Court **GRANTS** Kimble's motion to transfer venue (ECF No. 31). The Court finds that Kimble has made this showing on the convenience factors by clear and convincing evidence. The Court thus **DENIES without prejudice** Opteon's cross-motion to strike ECF No. 14, the consent to become a party plaintiff. The Court likewise **DENIES as moot** ECF No. 22, which dealt with setting a briefing schedule for a potential motion to compel class member contact information. The Court *sua sponte* stays this order for 14 days should Opteon wish to appeal pursuant to Fed. R. Civ. P. 72(a). Thereafter, the Clerk of the Court is directed to transfer this case to the Northern District of Illinois.

**IT IS SO ORDERED.**

Dated:  September 20, 2024
        Rochester, NY          */s/ Mark W. Pedersen*
                               MARK W. PEDERSEN
                               United States Magistrate Judge